UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

LUIS BURGOS-SANTOS,

                              Petitioner,                      05 Civ. 3736 (PKC)

      -against-

                                                                    MEMORANDUM
                                                                  AND ORDER

GARY GREENE,
Superintendent of Great Meadows
Correctional Facility,
                              Respondent.
----------------------------------------------------------x

P. KEVIN CASTEL, U.S.D.J.

        On March 29, 2005, Luis Burgos-Santos filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his July 22, 1998 conviction in Supreme Court, Bronx County, for second degree murder and criminal possession of a weapon. Respondent moves to dismiss the petition urging that the March 29, 2005 filing was beyond the one-year statute of limitations period provided for in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1).

        Under the provisions of 28 U.S.C. § 2244(d)(1), a petition for a writ of habeas corpus may be filed within one year from the date on which a conviction became final or from the time that the facts giving rise to petitioner's claim could have been discovered. Mr. Burgos-Santos was convicted on July 22, 1998 and appealed his conviction to the Appellate Division, First Department. The appeal was decided on October 18, 2001. See People v. Burgos-Santos, 732 N.Y.S. 2d (1st Dept. 2001). Petitioner sought further review in the New York Court of Appeals and was granted leave to appeal on December 28, 2001. See People v. Burgos-Santos, 97 N.Y. 2d 679 (2001). The New York Court of Appeals affirmed in an

Opinion issued May 2, 2002, sub nom. People v. Brown, 98 N.Y.2d 226 (2002). The judgment became final on August 1, 2002, upon the expiration of the 90-day period for petitioning for a writ of certiorari in the United States Supreme Court. See William v. Artuz, 237 F.3d 147, 150-51 (2d Cir. 2001). Petitioner's March 29, 2005 filing in this Court was well beyond the one-year limitations period.

In an order filed April 12, 2005, Chief Judge Michael Mukasey directed petitioner to show cause why his petition should not be dismissed as untimely under AEDPA (the "April 12 Order"). The April 12 Order required petitioner, proceeding pro se, to demonstrate either that his petition was, indeed, timely, or that there was a basis in law or in equity for tolling the statute of limitations. The Order advised petitioner of the type of facts he would need to demonstrate in order to establish a basis for equitable tolling:

> Specifically, petitioner may show that (1) there was an impediment imposed by the State which prevented him from timely filing a write of habeas corpus; (2) he is asserting the violation of a constitutional right not recognized by the Supreme Court until some time after the one-year statue of limitations had expired; or (3) the factual predicates of his claims were not and could not have been discovered within the applicable statute of limitations period. 28 U.S.C. § 2244(d)(1)(B), (C) and (D). He should include any facts showing that the instant petition should be equitably tolled by establishing (1) extraordinary circumstances prevented him from filing this petition on time and (2) he acted with reasonable diligence throughout the period he seeks to toll.

In response to the April 12 Order, petitioner filed an affirmation that recounted his actions following the ruling by the New York Court of Appeals. Petitioner came in contact with an organization that styled itself as the "Freedom Forum of New York City—Constitutional Civil Rights Foundation—Civil Rights Advocacy Education Foundation". It informed petitioner in a letter dated October 9 that its "current membership rate is $3,000.00" and that "[a]ll our members receive the services of Freedom Forum Attorneys, at all crafting stages of the **written** pleadings in a matter." (emphasis-in-the original) A letter from a "Sara Goldman, Attorney at Law" dated October 15, 2002 "acknowledge[d] activation of your

2

membership . . . ."[1]  Subsequently, petitioner received correspondence (undated) from Daniel C. Furman, Esq. of the "Furman Law Firm" identifying the firm on the letterhead as "Formerly:  Freedom Forum of New York City". On July 30, 2003, petitioner wrote to Furman stating as follows:  "Prior to the merger with Furman Law, I was informed that Habeas Corpus proceedings were instituted."  The one-year limitations period would expire a few days after he sent the letter.

In a letter dated May 7, 2004 to Al Dilmaghani, Esq. of the Furman Law Firm, petitioner acknowledged receipt of a "letter/report dated April 22 2004" and petitioner noted that "all the facts noted on your report are correct".  In the May 7 letter, petitioner raised with Mr. Dilmaghani whether his case raised a Sixth Amendment issue in view of Crawford v. Washington, 541 U.S. 36 (2004).

By June 28, 2004, petitioner apparently had suspicions that his attorneys might not have lived up to their obligations and he wrote to the New York State Bar Association seeking biographical information concerning Messrs. Dilmaghani and Furman. He wrote to the Character and Fitness Committee of the First Department on June 29, the Office of Court Administration on July 5, the Third Department on July 5 and July 14 and the First Department on July 14.  Petitioner annexes responses dated July 9 from the Office of Court Administration, July 14 from the Third Department, and July 16 and July 20 from the First Department.  The responses simply confirmed that Dilmaghani and Furman were members of the bar, and not then under suspension, although Furman's attorney registration filing was reported to be about 9 months late. By August 13, 2004, petitioner had written to Dilmaghani inquiring as to "the status of my appeal".  By announcement dated August 23, 2004, peti-

---

[1] Ms Goldman, according to respondent, was suspended from the practice of law on November 29, 2004 for her actions in connection with the First Department's Assigned Counsel Plan.  In re Sara Goldman, 11 A.D. 3d 178 (1st Dept. 2004).

3

tioner was advised that Furman had died and that Dilmaghani was the executor of the estate. Petitioner wrote Dilmaghani on Septembers 8 asking for copies of files and advising that "[a]s you know I am on a dead line [sic] to file my habeas corpus in the federal district court . . . ." He wrote to the Clerk of the Court in October 1, 2004 seeking "a copy of any document submitted with this Court by Mr. Daniel C. Furman . . . ."

The facts are muddy as to petitioner's own belief as to the pendency of a petition. On or about July 30, 2003, petitioner was of the stated belief that a habeas petition had been filed. As of September 8, 2004 he was concerned about a "dead line" for filing. By October 1, 2004 he was writing to the Clerk of this District inquiring as to the existence of a filing or, alternatively, for the appointment of a "competent attorney to prepare Mr. Burgos Habeas Corpus petition . . . ."

The Standards For Equitable Tolling.

The standard for equitable tolling on the basis of attorney incompetence or misconduct has been set forth most recently in two opinions of the Second Circuit: Baldayaque v. United States, 338 F.3d 145 (2d Cir. 2003) and Doe v. Menefee, 391 F.3d 147 (2d Cir. 2004). The petitioner must demonstrate that: (1) an extraordinary circumstances prevented the timely filing of the petition; (2) there is a causal connection between the extraordinary circumstances and the failure to file; and (3) the petitioner was diligent during the period for which he seeks tolling. Doe, 391 F.3d at 175. Petitioner's reliance upon counsel does not relieve him of the necessity of having acted diligently:

> "Even where the extraordinary circumstances on which the petitioner rests his claim involve attorney incompetence, the petitioner must still demonstrate that he himself made reasonably diligent attempts to ensure that his petition was filed on time. . . . In other words, the act of retaining an attorney does not absolve the petitioner of his responsibility for overseeing the attorney's conduct or the preparation of the petition. Particularly because petitioners often are fully capable of preparing and filing their habeas petitions *pro se,* and *pro se* status does not in itself constitute an extraordinary circumstance meriting tolling . . . it would be inequitable to

4

> cumstance meriting tolling . . . it would be inequitable to require less diligence from petitioners who are able to hire attorneys than from those who are forced to proceed *pro se.* In the attorney incompetence context, therefore, the reasonable diligence inquiry focuses on the purpose for which the petitioner retained the lawyer, his ability to evaluate the lawyer's performance, his financial and logistical ability to consult other lawyers or obtain new representation, and his ability to comprehend legal materials and file the petition on his own."

Id.

Here, the extraordinary circumstance was the confluence of the following: the acceptance of payment for the benefit of petitioner, the ambiguous and, hence, misleading communications from the "Freedom Forum", the cavalier transfer of a client (i.e. petitioner) from Ms. Goldman to Mr. Furman without any indication that either secured the client's prior informed consent, the inaction of Ms. Goldman and Mr. Furman in not filing a habeas petition within the limitations period, and the failure of either to inform petitioner of their failure to act.[2] The record demonstrates that petitioner was in direct communication with Sara Goldman, Esq. and the Freedom Forum of New York City of which she variously described herself as "General Counsel" or "Attorney at Law, Office of General Counsel". Fostering the notion that she would be representing petitioner, Ms. Goldman listed her personal registration with the bar of this Court on the letterhead immediately below the name "Freedom Forum of New York City": "Federal Bar No: SG2509 USDC/ED &SDNY". The records of this Court indicate that a person of the same name with the same identification number became a member of the bar of this Court on August 13, 2002, about seven weeks before the correspondence was written. Sara Goldman of the "Freedom Forum" has appeared in habeas proceedings in

---

[2] None of petitioner's former attorneys are parties to the present proceeding and I cannot and do not make any findings binding on them. It is not necessary for me to decide in the course of this proceeding whether the so-called "Freedom Forum" acted in accordance with New York Disciplinary Rules in holding itself out as a "foundation" to which a person could become a "member" and then "receive the services of Freedom Forum Attorneys, at all crafting stages of the **written** pleadings in a matter." (emphasis-in-the-original") See DR 2-101(A)(prohibiting claims that are false, deceptive or misleading) and (E) (requiring a written statement clearly describing the services to be rendered for a fixed fee).

5

Courts within this Circuit. See Williams v. Donnelly, 2005 WL 2290592 (E.D.N.Y. April 12, 2005). Reyes v. Irwin, 273 F.Supp. 2d 205 (E.D.N.Y. 2003). Ms. Goldman, in "activat[ing]" petitioner's "member[ship]", tacitly acknowledged the receipt of the $3,000 payment referenced in a letter dated October 9. It was reasonable for a non-English speaking, incarcerated prisoner to believe that Goldman had undertaken to file a habeas petition on his behalf. Furman and his firm freely assumed Goldman's professional obligations to petitioner but did not file a petition or alert him to the looming expirations of the statute of limitations. It was incumbent upon attorney Furman, at a bare minimum, to have set the petitioner straight when in petitioner's letter of July 30, 2003, he expressed his understanding that "Habeas Corpus proceedings were instituted . . . ." Furman should have informed petitioner that no proceedings had been filed and none would be filed by the expiration of the statute of limitations. It is not clear when prior to July 30 petitioner formed the belief that the petition had been filed, but the unrebutted facts lead to the conclusion that the belief was reasonable and grounded in his communications with counsel. I conclude that the foregoing course of events constitute an extraordinary circumstance and satisfies the first required prong for equitable tolling.

I also conclude that the second prong is met because counsel's failure to file or, alternatively advise petitioner that he had not filed and that the statute of limitations would soon expire, was the proximate cause of petitioner not filing within the one-year period. Finally, I conclude the third prong is met because petitioner was diligent in his pursuit of his rights during the period for which tolling is sought. Petitioner, who is incarcerated, states in his affirmation that he neither speaks nor writes English. He made inquiry concerning his attorney's actions on multiple occasions. Petitioner's actions demonstrate that he had formed a basis to be suspicious of his attorney's performance as of June 28, 2004 and I conclude that tolling ended as of that date. I conclude on the record before me that there is a basis for equi-

table tolling from October 15, 2002, when he was advised of the activation of his membership in the "Freedom Forum", until June 28, 2004, when he expressed suspicion concerning his attorneys' actions. Nevertheless, the statute of limitations was running and was not tolled from August 1, 2002 until October 15, 2002, a period of 75 days; it also was running from June 28, 2004 to March 29, 2005, a period of 271 days. Excluding the period of tolling, petitioner's petition was filed 346 days after August 1, 2002 and, thus, is timely.

I acknowledge the potential for some imprecision in the calculation of the tolling period, but I do not conclude it is not be material. A reasonable person might not expect the petition to have been filed until some reasonable period of time after the engagement of an attorney and, by this logic, the tolling should not begin on October 15, 2002 but some date thereafter. But the same logic would apply to the end of tolling. A reasonable person would not expect to know the results of an investigation of his attorneys' conduct commenced on June 28, 2004 until a date sometime thereafter. Thus, if I were to add a period of perhaps sixty days to both the commencement and the ending of the tolling period, it would not alter the conclusion that the petition is timely.

Conclusion

I deny the motion to dismiss and conclude that the petition is not time-barred under 28 U.S.C. § 2244(d)(1). Respondent is directed to file the record in the state court proceedings and its response to the petition by December 2, 2005. Petitioner may reply by January 4, 2006.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
October 5, 2005