USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/23/09

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LUIS BURGOS-SANTOS,                                    :
                                                      :
                              Petitioner,             :          **REPORT AND**
                                                      :          **RECOMMENDATION**
                - against -                            :
                                                      :          **05 Civ. 3736 (PKC) (RLE)**
GARY GREENE, Superintendent, Great                    :
Meadows Correctional Facility,                        :
                                                      :
                              Respondent.             :

**To the HONORABLE P. KEVIN CASTEL, U.S.D.J.:**

## I. INTRODUCTION

Petitioner, Luis Burgos-Santos, a New York state prisoner at Great Meadows

Correctional Facility, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Petition

was received by the *Pro Se* Office in this District on April 5, 2004. Burgos-Santos was convicted

of murder in the second degree (N.Y. PENAL LAW §125.25(2)) and criminal possession of a

weapon in the second degree (N.Y. PENAL LAW §265.03). He was sentenced to an indeterminate

term of twenty-five years to life on the count of second degree depraved indifference murder and

a determinate term of fifteen years on the count of criminal possession of a weapon, with the

sentences to run concurrently.

Burgos-Santos challenges his conviction on grounds that: 1) the verdict was against the

weight of evidence; 2) the evidence was legally insufficient to support the jury's verdict; 3) the

trial court improperly permitted the prosecution to impeach him with his withdrawn alibi notice;

and 4) he received ineffective assistance of both trial and appellate counsel. For the reasons set

forth below, I recommend that the Petition be **DENIED**.

## II. BACKGROUND

### A.    Factual Background

On June 14, 1996, the Montanez family was gathered on the front porch of their home playing dominoes. (Trial Transcript, June 9, 1998 ("Tr.") at 40-41, 152.) Among those present were Basilio Montanez ("Basilio") and his wife, Ramona Montanez ("Ramona"); their daughter, Wanda Montanez ("Wanda"); her boyfriend, Jose Villanueva; their son, Juan Montanez ("Juan"); his wife, Maribel Montanez ("Maribel"), and her four children, including Jose Rodriguez and Yiraida Rodriguez ("Yiraida"); and Yiraida's daughter, Jasmine. (*Id.* at 39-41.) Burgos-Santos repeatedly sped past the Montanez home in a black Camaro with a Puerto Rican flag on the antenna, driving erratically and playing music loudly, trying to get the attention of some of the Montanez women. (*Id.* at 152-53.) He had consumed twelve beers, and tried multiple times to get dates with Wanda or Yiraida, even though they rebuffed his advances. (*Id.* at 469-74.) Basilio, Juan, and Villanueva were standing by the Montanez family car when Burgos-Santos returned for the last time. Juan confronted him about his erratic driving and his improper advances towards Wanda and Yiraida. Burgos-Santos reacted by arguing with the three unarmed men. (Tracy Siligmueller's Aff. in Opp'n to Petition for Habeas Corpus ("Siligmueller Aff."), March 2, 2006, Ex. 1 at 5-6.) He went to his car, got a gun from under one of the seats, and began shooting at the three men. (Tr. at 51-54.) He fired two to three shots before fatally shooting Villanueva. (*Id.* at 52-54.) He then shot at Juan and Basilio as they fled, but missed. (*Id.* at 53-55.) Maribel, Ramona, sixteen-year-old Yiraida, and six-month-old Jasmine were all outside on the porch fifteen feet away or on the sidewalk adjacent to the shooting. (*Id.* at 50, 70-71, 81-82, 224, 289-90, 367-68.)

2

Before trial, a notice of alibi describing Burgos-Santos's whereabouts was filed with the court, but was later withdrawn. (Pet. at 6a.) Defense counsel objected to the use of this withdrawn alibi notice by the Government to impeach his client at trial, but the trial court allowed it. (Tr. at 411-23.) After hearing testimony from the Government's six eyewitnesses and Burgos-Santos's account of the events, the jury found Burgos-Santos guilty of depraved indifference murder.  (Tr. at 664-72.)

**B.      Procedural Background**

Burgos-Santos's conviction was affirmed by the Appellate Division on October 18, 2001. *People v. Burgos-Santos*, 731 N.Y.S.2d 182 (N.Y. App. Div. 2001).  The brief filed by his appellate counsel raised three claims: 1) the evidence was neither sufficient nor weighty enough to prove beyond a reasonable doubt that he shot the deceased under circumstances that evinced a depraved indifference to human life; 2) it was error to allow the prosecution to impeach him with the notice of alibi; and 3) the twenty-five year-to-life sentence was excessive.  (*See* Siligmueller Aff., Ex. 1 (Burgos-Santos's Brief to Appellate Division, June 2000).) In a supplemental *pro se* brief, Burgos-Santos presented an additional claim of ineffective assistance by trial counsel based on alleged *Rosario* and *Brady* violations, counsel's abandonment of an intoxication defense, and counsel's failure to object to alleged prosecutorial misconduct. (*Id.*, Ex. 3.)  In rejecting his claims, the Appellate Division found that Burgos-Santos's conviction for depraved indifference murder was supported by the evidence; specifically, that "he retrieved a gun from his car [and] aimed at three unarmed men," fatally shooting one of them, and continued to shoot into a crowd of people. *Burgos-Santos*, 731 N.Y.S.2d at 183.  Additionally, in considering Burgos-Santos's claim that the State's use of withdrawn alibi to impeach him was unlawful, the court held that

3

"[t]o the extent that [Burgos-Santos] is raising a constitutional claim, such claim is unpreserved" and declined to review it. The court concluded that the withdrawn alibi notice was properly admitted under judicial discretion as a prior inconsistent statement used to impeach the witness. *Id.* Based on the record, the Appellate Division concluded that Burgos-Santos had received meaningful representation. *Id.*

Burgos-Santos requested leave to appeal the Appellate Division's decision and asked the Court of Appeals "to consider and review all issues outlined" in both of his appeal briefs. (Siligmueller Aff., Ex. 5.) Through his appellate counsel, Burgos-Santos subsequently filed a supplemental leave letter asking the court to grant him leave to address the unresolved issue of whether the prosecution can impeach a criminal defendant with his withdrawn statutory notice of alibi. (*Id.*, Ex. 7.) The application for leave to appeal was granted on December 28, 2001. *People v. Burgos-Santos*, 764 N.E.2d 398 (N.Y. 2001). The brief before the Court of Appeals addressed only the issue of impeachment with the withdrawn notice of alibi. (Siligmueller Aff., Ex. 9.) On May 2, 2002, the Court of Appeals ruled that, although Burgos-Santos had failed to preserve his constitutional claims relating to the notice of alibi, the trial court had erred in allowing his impeachment with the withdrawn notice after he provided a non-alibi defense at trial. *People v. Brown*, 774 N.E.2d 186, 191, n.3 (N.Y. 2002), *aff'g order Burgos-Santos*, 731 N.Y.S.2d 182. The court applied the standard of harmless error for *non*-constitutional trial errors, and affirmed Burgos-Santos's conviction. *Id.* at 191-92.

On June 1, 2005, the Bronx County District Attorney's Office received an application from Burgos-Santos for a writ of error *coram nobis* in which he claimed ineffective assistance of appellate counsel. (Siligmueller Aff., Ex. 12.) The writ was denied by the Appellate Division on

4

November 29, 2005. (*Id.*, Ex. 13.) Burgos-Santos's request for appeal was denied by the Court

of Appeals on February 16, 2006, on the ground that Burgos-Santos could not file a civil appeal

from the Appellate Division's order entered in the criminal proceeding. (*Id.*, Ex. 14.)

## III. DISCUSSION

### A.    Threshold Issues

#### 1.    Timeliness

A petitioner must file an application for a writ of habeas corpus within one year of his

conviction becoming final. *See* 28 U.S.C. § 2244(d)(1). A conviction becomes final "when [the]

time to seek direct review in the United States Supreme Court by writ of certiorari expire[s],"

*Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001) (*quoting Ross v. Artuz*, 150 F.3d 97, 98 (2d

Cir. 1998)), that is, ninety days after the final determination by the state court. On May 2, 2002,

the Court of Appeals affirmed Burgos-Santos's conviction. The *Pro Se* Office in this District did

not receive Burgos-Santos's initial Petition until March 21, 2005. (Pet. at 7.) Then-Chief Judge

Michael B. Mukasey stayed the Petition and ordered Burgos-Santos to "show cause" why it

should not be time-barred. (Order, April 12, 2005 at 2.) In response, Burgos-Santos filed an

affirmation that the attorney he hired never performed any work on his behalf, including failing

to timely file the habeas petition. (Petitioner's Affirmation ("Pet. Aff."), May 10, 2005.)   The

Court found that extraordinary circumstances had prevented the timely filing of the Petition, and

held that there was a basis for equitable tolling, denying Respondent's Motion to Dismiss.

*Burgos-Santos v. Greene*, No. 05 Civ. 3736 (PKC), 2005 U.S. Dist. LEXIS 22766 (S.D.N.Y.

Oct. 5, 2005).

## 2. Exhaustion

Pursuant to 28 U.S.C. § 2254(b), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA" or "The Act"), a court may not consider a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies. 28 U.S.C. § 2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997). This requirement of exhaustion is "based on considerations of comity between federal and state courts, ensuring that the state courts have an opportunity to consider and correct any violations of their prisoners' federal constitutional rights." *Warren v. McClellan*, 942 F. Supp. 168, 170 (S.D.N.Y. 1996) (*citing Picard*, 404 U.S. at 275). In order to satisfy substantive exhaustion, a petitioner's claim before the state courts must have been federal or constitutional in nature. Although not an exacting standard, the petitioner must have informed the state courts of "both the factual and the legal premises of the claim [he] asserts in federal court." *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (*quoting Daye v. Attorney Gen.*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*)). He may meet this requirement by:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claims in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye*, 696 F.2d at 194. Burgos-Santos presented his first, second, and third claims, and that part of his fourth claim relating to trial counsel, to the state court on direct appeal. His fourth claim, concerning appellate counsel, was also presented to the appellate court, as a collateral motion. The federal nature of each of his claims on appeal was asserted in sufficient terms to "call to mind" the protections of the United States Constitution, thus satisfying substantive exhaustion.

6

(*See* Siligmueller Aff., Exs. 1 & 3.)

Procedurally, a petitioner must utilize all avenues of appellate review within the state court system before proceeding to federal court. *See Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994). He must raise his federal claims at each level of the state court system, "present[ing] the substance of his federal claims 'to the highest court of the pertinent state.'" *Id. (quoting Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990)). Here, Burgos-Santos's third claim was presented to the Court of Appeals on appeal from the Appellate Division's ruling. (Siligmueller Aff., Exs. 7 & 9.) This claim is fully exhausted. The portion of Burgos-Santos's fourth claim relating to ineffective appellate counsel is also fully exhausted, as the claim was properly raised in a collateral motion to the Appellate Court, and the denial of writ was appealed to the New York Court of Appeals. (*Id.*, Exs. 12 & 13.)

Burgos-Santos's first and second claims, and the part of his fourth claim relating to ineffective trial counsel were not presented to the Court of Appeals, and are unexhausted. (*Id.*, Exs. 7 & 9.) Under AEDPA, district courts presented with a "mixed petition"—one presenting both unexhausted and exhausted claims—may proceed in one of the following ways: (1) deny the petition on the merits pursuant to 28 U.S.C. §2254(b)(2), where the unexhausted claims are "patently frivolous," *Tavarez v. New York*, No. 07 Civ. 8673 (NRB), 2008 WL 2775810, at *4, n.2 (S.D.N.Y. July 14, 2008); (2) dismiss the entire petition without prejudice, *Zarvela v. Artuz*, 254 F.3d 374, 382 (2d Cir. 2001); or (3) stay the petition pending the exhaustion of state remedies, considering whether it would be "a waste of judicial resources . . . to send a petitioner back to state courts to present to them claims that are clearly frivolous[,]" *Colon v. Johnson*, 19 F. Supp. 2d 112, 120 (S.D.N.Y. 1998).

### 3.    Procedural Default

"[A] federal habeas court need not require that a federal claim be presented to a state

court if it is clear that the state court would hold the claim procedurally barred." *Harris v. Reed*,

489 U.S. 255, 263, n.9 (1989). Such claims are deemed exhausted, but procedurally defaulted.

*Bossett*, 41 F.3d at 828. Respondent argues that Burgos-Santos procedurally defaulted on his first

and second claims and the part of his fourth claim relating to ineffective trial counsel[1] because he

did not raise them on appeal to the New York Court of Appeals, and he is now unable to seek

further direct review from the Court of Appeals or file for collateral relief.[2] (Siligmueller Aff.,

Ex. 1 at 11.)

Because Burgos-Santos did not ultimately raise these claims before the Court of Appeals,

he could only overcome this procedural default by demonstrating cause for the default and actual

prejudice attributable thereto or "demonstrat[ing] that failure to consider the claims will result in

a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)

(citations and quotations omitted). "[T]he cause standard requires [him] to show that 'some

objective factor external to the defense impeded counsel's efforts' to raise the claim in state

courts." *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (*quoting Murray v. Carrier*, 477 U.S. 478,

---

[1]Respondent recognizes, however, that Burgos-Santos "could, in theory, still seek collateral review of his ineffective assistance of trial counsel claim to the extent that the claim is based on allegations *de hors* the record." (Mem. in Opp'n at 12, n.4 (referencing N.Y. CRIM. PROC. § 440.10(1)).)

[2]Respondent maintains that a claim initially raised in requesting appeal to the highest court, but not raised in subsequent submissions should not be considered exhausted, but should be deemed abandoned. (*See* Mem. in Opp'n, Mar. 2, 2006 at 7-10 (referencing *Galdamez v. Keane*, 394 F.3d 68 (2d Cir. 2005))); *See also Jordan v. Lefevre*, 206 F.3d 196, 198-99 (2d Cir. 2000) (a petitioner who "argu[ed] one claim in his letter [to the Court of Appeals] while attaching an appellate brief without explicitly alerting the state court to each claim raised does not fairly present such claims for purposes of the exhaustion requirement underlying federal habeas jurisdiction."); *Oquendo v. Senkowski*, 452 F. Supp. 2d 359, 367-68 (S.D.N.Y. 2006) (finding *pro se* claims not fairly presented, thus procedurally defaulted, where the petitioner's Court of Appeals application letter specifically pressed certain arguments but did not mention the previously submitted *pro se* claims or expressly direct the court to those arguments).

8

488 (1986)). Examples of objective factors include: (1) interference by officials that makes

compliance with state procedural rules impracticable; (2) a showing that the factual or legal basis

for a claim was not reasonably available to counsel; and (3) ineffective assistance of counsel. *Id.*

The first two factors are not presented here.

"[I]neffective assistance adequate to establish cause for the procedural default of some

*other* constitutional claim is *itself* an independent constitutional claim." *Edwards v. Carpenter*,

529 U.S. 446, 451 (2000) (emphasis in original). "*[T]hat* constitutional claim" must first be

raised in state court before being used to establish cause for a procedural default. *Id.* at 451-52

(emphasis in original). Burgos-Santos filed a writ of error *coram nobis* with the Appellate

Division to raise his ineffective assistance of appellate counsel claims. (Siligmueller Aff., Ex.

13); *see Smith v. Duncan*, 411 F.3d 340, 348, n.6 (2d Cir. 2005). The Appellate Division denied

the application without opinion. (Raymond E. Kerno Reply Mem. of Law in Support of Petition

for Habeas Corpus ("Kerno Reply Mem."), Sept. 8, 2006 at 6.) Burgos-Santos argues that

because of his ineffective assistance of appellate counsel claim, premised on his attorney's failure

to present certain arguments to both the Appellate Division and the Court of Appeals, his

unexhausted claims should not be forfeited. (*See* Kerno Reply Mem. at 9; Kerno Reply Aff. ¶¶

24-26.) Respondent asserts that because the appeal to the Court of Appeals is discretionary, there

is no right to counsel and thus no claim of ineffective assistance of counsel can be made or used

as a premise to overcome procedural default. *See Chalk v. Kuhlmann*, 311 F.3d 525, 526 (2d Cir.

2002); *see also Hernandez v. Greiner*, 414 F.3d 266, 270 (2d Cir. 2005). Even if this were not

the law in this Circuit, Burgos-Santos's claim would fail on the merits. *See Turner v. Artuz*, 262

F.3d 118, 123 (2d Cir. 2001) (referencing constitutional claims within an error *coram nobis*

9

petition does not in and of itself exhaust the referenced constitutional claims).

## 4. Procedural Bar

A petitioner may also be precluded from pursuing his claims on the merits because they are procedurally barred. This preclusion from federal habeas review results when: (1) the state court declined to address his federal claim because the petitioner failed to meet a state procedural requirement and (2) the state court decision rested on an independent and adequate state ground. *See Coleman*, 501 U.S. at 750; *Jones*, 126 F.3d at 414; *Pearson v. Greiner*, No. 03 Civ. 1477 (RJH) (GWG), 2004 WL 2453929, at \*8 (S.D.N.Y. Nov. 3, 2004). A state law ground is "adequate" if it is based on a rule that is "firmly established and regularly followed by the state in question." *Id.* at \*9 (*citing Garcia v. Lewis*, 188 F.3d 71, 77 (2d. Cir. 1999) (internal quotations omitted)).

As with a procedural default, a petitioner can overcome a procedural bar by showing "cause for the default and actual prejudice . . . or demonstrat[ing] that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see Harris v. Reed*, 489 U.S. 255, 258 (1989). The Supreme Court has defined "cause" as showing that "some objective factor external to the defense impeded [petitioner's] efforts to raise the claim in state court." *McCleskey*, 499 U.S. at 493 (*quoting Murray*, 477 U.S. at 488). Additionally, prejudice may exist if "'there is a reasonable probability' that the result of the trial would have been different" absent the alleged constitutional violation. *Strickler v. Greene*, 527 U.S. 263, 289 (1999). Lastly, the "fundamental miscarriage of justice" exception "is only available where the petitioner can supplement his constitutional violation with a 'colorable showing of factual innocence[]'" in the form of newly adduced evidence of innocence. *Washington v.*

10

*Superintendent Otisville Corr. Facilities*, No. 96 Civ. 2729 (SAS), 1997 WL 178616, at *7 (S.D.N.Y. Apr. 11, 1997) (*quoting McCleskey*, 499 U.S. at 494). Finally, review is foreclosed "even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990).

### a. Burgos-Santos's Third Claim is Procedurally Barred

Burgos-Santos's third claim, regarding his withdrawn alibi notice, is exhausted because it was addressed by both the Appellate Division and the Court of Appeals. The Appellate Division, however, concluded that a constitutional claim based on the propriety of the introduction of the evidence was unpreserved, and refused to review the claim "in the interest of justice." *Burgos-Santos*, 731 N.Y.S.2d at 183. The Court of Appeals found that there *are* constitutional implications, as well as state common-law grounds, for its conclusion that the trial court erred in permitting the prosecution to impeach a defendant with a withdrawn notice of alibi. *Brown*, 774 N.E.2d at 191-92. Despite this finding in favor of Burgos-Santos, they ultimately applied the standard of harmless error, noting that he had failed to preserve his constitutional claim, and concluded that the weight of evidence against Burgos-Santos was such that there was no "significant probability of acquittal had the prosecutor not been permitted to use the withdrawn notice of alibi for impeachment purposes." *Id.*

Burgos-Santos has not addressed the issues of cause, prejudice, or fundamental miscarriage of justice. Even if he had addressed these issues, there is no reason to believe he could have met his burden. The Court of Appeals, for example, found that any error was harmless. Consequently, Burgos-Santos's third claim, that the court improperly permitted the prosecutor to impeach him with his withdrawn alibi notice, is procedurally barred from federal

11

habeas review.

## B.   Merits of the Claims

### 1. Standard of Review

AEDPA constrains a federal habeas court's ability to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. The Act limits issuance of the writ to circumstances in which the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary to federal law if the state court applies "a conclusion opposite to that reached by [the Supreme] Court on a question of law or if [it] decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. Furthermore, in cases where the state court decision rests on a factual determination, the federal court must find that the "decision . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

### 2. First Claim: The Verdict Was Against the Weight of the Evidence

"Weight of the evidence" claims are not cognizable on federal habeas review. *See, e.g.*, *Ex Parte Craig*, 282 F. 138, 138 (2d Cir. 1922); *see also Brown v. Fischer*, No. 03 Civ. 9818 (BSJ) (AJP), 2004 WL 1171277, at *6 (S.D.N.Y. May 27, 2004); *Douglas v. Portuondo*, 232 F. Supp. 2d 106, 113 (S.D.N.Y. 2002); *Rodriguez v. O'Keefe*, No. 96 Civ. 2094 (LLS), 1996 WL 428164, at *5 (S.D.N.Y. July 31, 1996). Therefore, Burgos-Santos's claim that his guilty verdict is against the weight of the evidence should be **DENIED**.

### 3. Second Claim: The Evidence was Legally Insufficient to Support the Jury's Verdict

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." *In re Winship*, 397 U.S. 358, 364 (1970). A conviction is supported by sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). A state court's determination of a factual issue is presumed to be correct, and is unreasonable only where the petitioner meets the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Thus, a petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002).

In considering the sufficiency of the evidence in support of a state conviction, the Court must "look to state law to determine the elements of the crime." *Fama v. Comm'r of Corr. Serv.*, 235 F.3d 804, 811 (2d Cir. 2000) (*quoting Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999)). Under New York law, a defendant may be found guilty of second degree depraved indifference murder, where, "[under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." N.Y. PENAL LAW § 125.25(2). A person acts recklessly "when he is aware of and consciously disregards a substantial and unjustifiable risk that [a result] will occur or that such circumstances exist." *Id.* § 15.05(3). "The risk must be of such a

nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." *Id.*

There is an important distinction between the mens rea of recklessness that results in a finding of depraved indifference murder versus reckless manslaughter. Under the standard applicable to Burgos-Santos's case, "objective circumstances of exceptionally high, unjustified risk of death constitute the primary means by which the Legislature differentiated between the reckless state of mind sufficient to establish the mental culpability of manslaughter and the extreme recklessness of murder under Penal Law §125.12(2)." *People v. Sanchez*, 777 N.E.2d 204, 207-08 (N.Y. 2002); *see also People v. Register*, 457 N.E.2d 704 (N.Y. 1983).

Burgos-Santos argues that if the prosecution witnesses' accounts of the incident were to be believed, his actions of taking a gun out of his car, shooting Villanueva in the chest from little more than two feet away, and aiming and firing the gun at Basilio and Juan as they fled, could only be viewed as intentional. (*See* Kerno Reply Mem. at 4-11; Siligmueller Aff., Ex. 12 at 12-21.) The Court disagrees. A rational jury could conclude that Burgos-Santos was not acting with a conscious objective to kill Villanueva when he shot him. He retrieved the gun from his car only after being confronted by Basilio, Juan, and Villanueva. (Tr. at 51-54.) Additionally, the single shot that killed Villanueva was fired while Burgos-Santos was still half-in and half-out of the car. (Tr. at 52-54, 86-90.) No further injuries were inflicted. The jury was also aware that Burgos-Santos had been drinking heavily. While the jury did not conclude that this was a defense, it could find that it affected his ability to form the specific intent to kill. Consequently, the jury could have a reasonable doubt whether Burgos-Santos intended to kill Villanueva, and could therefore

14

rationally conclude that Burgos-Santos's actions were reckless.[3] *Cf. Hafeez*, 792 N.E.2d 1060; *Sanchez*, 777 N.E.2d 204; *Fama*, 235 F.3d 804.

The critical factual circumstance in Burgos-Santos's case is that the shooting took place in close proximity to several other people, including children. (*See* Tr. at 50, 70-71, 81-82, 224, 289-90, 367-68.) The presence of bystanders in the vicinity sufficiently refutes the contention that no rational trier of fact could conclude that the circumstances were similar enough to a case in which children were nearby playing or a case in which shots were fired aimlessly into a crowd, such that there existed an exceptionally high, unjustified risk of death. *See Sanchez*, 777 N.E.2d at 216-17; *Hafeez*, 792 N.E.2d at 1063. Thus, when the Appellate Division upheld the conviction, it noted, among other things, that Burgos-Santos fired the fatal shots in close proximity to numerous people. *Burgos-Santos*, 731 N.Y.S.2d at 183. The decision was not contrary to, or an unreasonable application of, clearly established federal law.

The presumption of legal sufficiency accorded to state courts' findings of fact is not overcome, and the Court concludes that a rational trier of fact could have reached the conclusion beyond a reasonable doubt that Burgos-Santos's action constituted a reckless shooting under circumstances evincing a depraved indifference to human life. Therefore, Burgos-Santos's claim that the evidence was legally insufficient to support the jury's verdict should be **DENIED**.

---

[3]Burgos-Santos also seems to be arguing jury confusion as a result of the charges for both intentional and depraved indifference murder. (Kerno Reply Mem. at 12); *see People v. Gallagher*, 508 N.E.2d 909, 909-10 (N.Y. 1987). The record shows that the trial judge properly charged the jury with both theories in the alternative. (Tr. at 595.) The trial judge explained to the jury why the theories were inconsistent; "you cannot find the defendant both intended to cause Mr. Villanueva's death and that he recklessly disregarded the risk that his conduct would cause his death." (*Id.*) The jury is presumed to have followed the instructions. *See Allaway v. McGinnis*, 301 F. Supp. 2d 297, 300 (S.D.N.Y. 2004). Therefore, Burgos-Santos's claim that the depraved indifference murder count charged to the jury caused confusion to the jurors is meritless.

### 4. Fourth Claim: Ineffective Assistance of Counsel

Burgos-Santos has a Sixth Amendment right to the effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). To establish a violation of that right, he must show two things: 1) that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms" and 2) "that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different," therefore prejudicing him. *Id.* at 689, 697. The first criterion requires a showing that counsel's errors were "so serious that he was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," and the latter requires a showing that counsel's errors so undermined the adversarial process that it deprived Burgos-Santos of a fair trial whose result is reliable. *Id.* at 687. However, "because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly," Burgos-Santos "must do more than show that he would have satisfied *Strickland's* test." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Instead, "he must show that the . . . [First Department] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

In reviewing ineffective assistance of counsel claims, the Court strongly presumes that counsel rendered adequate assistance in making significant decisions in the exercise of reasonable professional judgment. *Id.* at 718; *see also United States v. Cronic*, 466 U.S. 648, 658 (1984). Therefore, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. To make out a successful claim of ineffective assistance of appellate counsel, a petitioner must show that

16

"counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). In investigating these claims, it is essential to keep in mind that, "appellate counsel is not required to raise every non-frivolous issue on appeal, even when the defendant requests it be raised." *Perez v. Walker*, No. 97 Civ. 1134 (DAB) (KNF), 2001 U.S. Dist. LEXIS 4429, at *11 (S.D.N.Y. Apr. 10, 2001) (*citing Jameson v. Coughlin*, 22 F.3d. 427, 429 (2d Cir. 1994)); *see also Murray*, 477 U.S. 478; *Jones v. Barnes*, 463 U.S. 745 (1983).

### a. Trial Counsel

In April 2001, Burgos-Santos submitted a *pro se* supplemental appellate brief claiming ineffective assistance of his trial counsel. The appellate court disagreed, finding that he received "meaningful representation." *Burgos-Santos*, 731 N.Y.S.2d at 183. He maintains he was denied effective assistance of counsel because his trial counsel (1) did not object when the prosecuting attorney committed *Rosario* and *Brady* violations by not offering the 911 communications evidence to the defense *and* failed to request the tapes or the equivalent thereof himself; (2) abandoned a defense based on Burgos-Santos's intoxication; and (3) failed to offer any exception or objection to the prosecutor's use of unfair tactics. (Pet. at 6e.) While it is likely this claim is unexhausted and procedurally defaulted, it nonetheless would be **DENIED** on the merits.

### (1) Failure to Raise *Rosario*/*Brady* Violation

Burgos-Santos contends that his trial counsel was ineffective because he did not alert the court that the prosecution failed to provide the defense with a copy of the 911 communications tapes and failed to affirmatively request these tapes, in violation of *People v. Rosario*, 173 N.E.2d 881 (N.Y. 1961), and *Brady v. Maryland*, 373 U.S. 83 (1963). (Pet. at 6e.) The 911

17

communications at issue were placed regarding Burgos-Santos's actions that led to his conviction. Although the 911 communications tapes were never introduced as evidence, the calls were mentioned several times throughout the trial. (Tr. at 48, 163-64, 262.)

In New York, the prosecution must disclose any written or recorded statement of a witness it intends to call at trial, where the statement (1) is in the prosecution's possession or control and (2) relates to the subject matter of the witness's testimony. *Rosario*, 173 N.E.2d at 882-83. Under *Brady*, the prosecution may not suppress evidence favorable to an accused "where the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The government has an affirmative duty to disclose exculpatory material or impeachment evidence, regardless of whether it is requested by the defense. *United States v. Jackson*, 345 F.3d 59, 68-69 (2d Cir. 2003).

The factual circumstances surrounding Burgos-Santos's claims show that there was no *Rosario* or *Brady* violation. After jury selection was completed, Burgos-Santos's trial counsel had a discussion on the record regarding the 911 communications tapes. (Trial Transcript, June 3, 1998 ("Tr. 1") at 337-38.) Counsel requested that the Assistant District Attorney ("ADA") turn over any remaining *Rosario* materials. The ADA responded that he had turned everything over, and added that although he did not intend to introduce the 911 tape of Yiraida's call, he would be happy to give a copy of it to the defense. Burgos-Santos's counsel declined this and stated, "I believe I have it." (*Id.* at 338.)

Thus, the ADA did not conceal or fail to disclose the 911 tapes, giving Burgos-Santos's trial counsel no reason to object on this ground. Therefore, Burgos-Santos's first claim, that his trial counsel was ineffective for failing to object to the ADA's *Rosario* and *Brady* violations, is

18

meritless. Even if the ADA had concealed the 911 tapes, Burgos-Santos's trial counsel affirmatively requested any remaining *Rosario* materials from the ADA, including the 911 tapes. The second part of this cliam, that his trial counsel was ineffective for not requesting the 911 tapes, is also rendered irrelevant because his trial counsel represented that he had possession of the tapes.

### (2) Defense of Intoxication

Burgos-Santos contends his trial counsel was ineffective for abandoning his defense of intoxication. (Pet. 6e.) He argues that counsel did not emphasize his intoxication enough during summations (Siligmueller Aff., Ex. 3 at 14-17), and that emphasizing the intoxication was essential because it could have been used to negate the *mens rea* of either specific intent or of recklessness. (*Id.*)

During his summation, Burgos-Santos's trial counsel mentioned Burgos-Santos's intoxication four times. First he reminded the jury that Burgos-Santos's actions occurred, "[a]fter a dozen beers." (Tr. at 492.) Then, he recalled for the jury Lieutenant Sullivan's testimony admitting that he smelled liquor on Burgos-Santos, that his eyes were bloodshot, and that he was drunk when he was arrested at his house. (*Id.* at 500.) Lastly, counsel reemphasized that Burgos-Santos was drinking beer for an hour the afternoon of the incident, and this was confirmed by the testimony of Juan. (*Id.* at 509-10.) In addition to the summation, counsel successfully requested an intoxication charge be read to the jury. (*Id.* at 482.) The court charged the jury that it could consider, "whether or not the defendant's mind was so obscured by drink that he was incapable of forming . . . particular intent," (*id.* at 588) but

[W]hen a person engages in conduct which creates a substantial unjustifiable and

19

grave risk that another person's death will result and that risk is of such a nature and degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation if the defendant does not perceive that risk and the only reason he does not perceive it is because he has voluntarily become intoxicated his conduct is nevertheless reckless.

(*Id.* at 590.)

The record demonstrates that counsel did not abandon the intoxication defense, but repeatedly reminded the jury of Burgos-Santos's drunkenness. Moreover, even if the Court were to find that counsel abandoned the intoxication defense, Burgos-Santos cannot demonstrate prejudice. Intoxication cannot negate recklessness. *See, e.g.*, *People v. Register*, 457 N.E.2d at 708; *People v. Kanelos*, 484 N.Y.S.2d 131 (N.Y. App. Div. 1985); *People v. Guetis*, 592 N.Y.S.2d 712 (N.Y. App. Div. 1993), *lv. denied*, 615 N.E.2d 229 (N.Y. 1993); *People v. Artix*, 631 N.Y.S.2d 907, 908-09 (N.Y. App. Div. 1995), *lv. denied*, 633 N.E.2d 1257 (N.Y. 1995). The jury could have found Burgos-Santos guilty of depraved indifference murder despite the most vigorous pursuit of his intoxication defense.

### (3) Alleged Prosecutorial Misconduct

Lastly, Burgos-Santos contends that his trial counsel was ineffective for failing to object to prosecutorial misconduct at trial. (Pet. 6e.) He argues that the ADA made numerous false and inflammatory accusations against Burgos-Santos in his opening statement, and effectively called Burgos-Santos names in his summation. (*Id.*; *see also* Siligmueller Aff., Ex. 3 at 18-21.) Burgos-Santos maintains that his counsel was obligated to object because the ADA's behavior violated Burgos-Santos's Constitutional rights. (Pet. 6e.)

Burgos-Santos first points to the ADA's opening statement to demonstrate how the ADA improperly characterized him as a child molester or sexual deviant and a stalker. The ADA said:

20

> The evidence you're going to get is going to show this defendant's bizarre, stalking actions over an eight-hour period in front of eyewitnesses, leading up to his gunning down an unarmed bystander on the street in front of 458 East 182nd Street on June 14, 1996.
>
> Now, that man, Burgos-Santos, spent several hours stalking a 16 year old girl who had come in to visit her grandfather with her family. They had come in from Patterson, New Jersey.
>
> She's 18 now, she was 16 then, you'll see she looks about 14, and he made various attempts to invite her to go somewhere . . . .

(Tr. at 18.) Burgos-Santos specifically protests to the ADA painting him as a stalker because it is a crime in itself. He asserts, "[I]t is long standing and settled that, 'A prosecutor may not try to convey to the jury that a defendant is guilty of other crimes not in issue . . .'" (Siligmueller Aff., Ex. 3 at 19 (*quoting People v. Williams*, 622 N.Y.S.2d 275, 276 (N.Y. App. Div. 1995) (internal citations omitted)).)

The evidence shows that throughout the course of the day on June 14, 1996, the thirty-seven year old Burgos-Santos attempted to give a gift to sixteen year old Yiraida twice, asked her out once, came to the Montanez family's porch three to five times, and drove by erratically six to eight times. (Tr. at 37, 42-46, 48, 156, 180, 252, 316, 355, 358.) This supports the ADA's language describing Burgos-Santos's actions as "stalking," and his comments about the age gap between Burgos-Santos and Yiraida. The remarks appear to be consistent with the evidence, and provided counsel with no reason to object. *See People v. Celdo*, 739 N.Y.S.2d 25, 26 (N.Y. App. Div. 2002); *People v. Castro*, 722 N.Y.S.2d 854, 856 (N.Y. App. Div. 2001).

Burgos-Santos's second major contention is that the ADA committed prosecutorial misconduct during his summation by straying from what is considered "fair play." In his closing statement, the ADA likened Burgos-Santos to "Freddy Krueger" from *A Nightmare on Elm Street* and "Jason" from *Halloween*. Burgos-Santos asserts this conduct was improper and that the

name-calling denied him a fair trial. (Siligmueller Aff., Ex. 3 at 20 (*referencing People v. Bowie*, 607 N.Y.S.2d 248, 250 (N.Y. App. Div. 1994)).) The *Bowie* case cited by Burgos-Santos, however, involved a situation in which there was persistent, varying, and repeated prosecutorial misconduct. Moreover, even if the behavior in this case constituted some form of prosecutorial misconduct, defense counsel's failing to object was not ineffective assistance of counsel.

The Appellate Division previously gave this claim due consideration and declared, "[t]he record establishes that defendant received meaningful representation." *Burgos-Santos*, 731 N.Y.S.2d at 183. In reaching this single-line conclusion, the court referenced *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998). *But see Scott v. Phillips*, 2007 WL 2746905, at *8, n.1 (E.D.N.Y. Sept. 19, 2007) (questioning whether the standard for effective assistance of counsel in the New York Court of Appeal's cases of *Benevento* and *Baldi* is contrary to the federal standard of *Strickland*; noting that New York reviews fairness of the process as a whole when examining ineffective assistance of counsel claims, while the federal standard considers the outcome of the proceeding; and ultimately deferring to the Second Circuit's prior conclusion that the New York standard is not contrary to Federal law). This Court agrees with the Appellate Division's outcome in Burgos-Santos's case, and concludes that its determination is not in conflict with Federal law on ineffective assistance of counsel. Based on the evidence, it is reasonable to find that the trial counsel's inaction may not even qualify as an error, but even if found to be an error, it was not "so serious that he was not functioning as counsel" guaranteed by the Sixth Amendment. Further, Burgos-Santos cannot demonstrate that he suffered any prejudice as a result of his trial counsel's alleged deficient representation. The extensive testimony of numerous witnesses and the evidence of the record leads to the conclusion that a reasonable jury would have reached the same verdict

22

whether or not the prosecution made the same closing statement. Thus, Burgos-Santos has not met his burden for proving ineffective assistance of counsel on the theory that the Appellate Division applied *Strickland* in an objectively unreasonable manner. This claim should be **DENIED**.

### b. Appellate Counsel

Burgos-Santos retained the same appellate counsel for both his appeal to the Appellate Division and his appeal to the Court of Appeals. He raises various ineffective assistance claims related to his representation and the arguments made by counsel at each level.

### (1) Appellate Division

Burgos-Santos maintains that his appellate counsel was ineffective because he failed "to realize that the evidence at the trial as presented by the prosecution bespoke of intentional behavior rather than reckless behavior." (Kerno Reply Mem. at 4.) He alleges that his counsel argued a reckless mens rea was applicable rather than the intentional mens rea supported by the facts. (Burgos-Santos's Petition for Error Coram Nobis ("ECN Petition"), May 24, 2005 at 13.) Counsel had argued on appeal to the Appellate Division that the trial court erred in refusing to charge the lesser included offenses of manslaughter in the first and second degree. Burgos-Santos contends that counsel's argument that recklessness was the culpable mental state appropriate in this case undercut Burgos-Santos's assertion that he should not have been found guilty of depraved indifference murder. (Kerno Reply Mem. at 10.) He argues that counsel should have argued that the weight of the evidence and his actions should rightly be found as an intentional homicide charge (ECN Petition at 16), and that his failure to be aware of, and argue, the distinction between intentional and reckless murder resulted in ineffective assistance of counsel under *Strickland*.

23

A defendant cannot be convicted under both theories of intentional murder and depraved indifference murder since a person cannot act both with intent and with conscious disregard. *People v. Gallagher*, 508 N.E.2d 909 (N.Y. 1987). Burgos-Santos presents no evidence that his counsel failed to make clear the distinction or was unaware of relevant law and precedent. Moreover, counsel's choice to argue the lesser mens rea of mere recklessness was a reasonable strategic decision given Burgos-Santos's own trial testimony.[4] The facts of the altercation and ultimate shooting as presented at trial could lead a reasonable jury to conclude Burgos-Santos's behavior was reckless, and the resulting conviction would be one of manslaughter, a lesser sentence than the second degree murder conviction that would result from either intentional or depraved indifference murder.

While this Court concludes Burgos-Santos has failed under the first prong of *Strickland* to show appellate counsel's performance was deficient, he also fails to meet the second prong's requirement of prejudice as a result of appellate counsel's strategic choices. Courts have found that "[i]n the appellate context, the prejudice prong of *Strickland* requires a showing of a reasonable probability that the unraised claim would have been successful before the state's highest court." *Peterson v. Bennett*, 2002 WL 1592600, at *4 (E.D.N.Y. July 18, 2002). While Burgos-Santos points to Court of Appeals precedent, such as *Sanchez* and *Policano*, to show the evolving law on depraved indifference murder, the earliest of these cases occurred concurrently with his own appeal to the Court of Appeals. As there is no evidence counsel was unaware of the distinction between intentional and depraved indifference murder and the developing

---

[4]At trial Burgos-Santos argued Villanueva had hit him, and after grabbing Villanueva's hand when he tried to hit him again, he heard a shot ring out. (Tr. at 454-55, 479.) He stated that until he heard that shot, he had not realized Villanueva had a gun in his hand, and that he left without knowing anyone had been shot. (*Id.* at 455-56.)

jurisprudence about the *mens rea* of depraved indifference, there cannot be an ineffectiveness determination premised on appellate counsel's inability to predict the future development of decisions based on the distinction. Further, Burgos-Santos's own trial testimony and various evidence presented at trial indicates that an appeal based on insufficient evidence to prove depraved indifference, a second degree murder conviction, and instead arguing in favor of the lower conviction of reckless manslaughter seems a well-considered strategic choice.

Burgos-Santos's claims are, as a result, meritless, and he cannot demonstrate any prejudice. *See Strickland*, 466 U.S. at 687. Thus, the Appellate Division properly denied his petition for error *coram nobis*. Therefore, this claim should be **DENIED**.

### (2) Court of Appeals

In his error *coram nobis* application, Burgos-Santos claimed that his counsel was ineffective for abandoning issues "during both his motion for permission to appeal and on the direct appeal" to the New York Court of Appeals.[5] (Kerno Reply Mem. at 8; *see also* ECN Petition at 17-20.) More specifically, he asserts that counsel abandoned his claims regarding (1)

---

[5]Respondent argues that Burgos-Santos could not properly present a claim of ineffective assistance of appellate counsel in his representation on appeal to the Court of Appeals within a writ of error *coram nobis* petition to the Appellate Division. (*See* Mem. in Opp'n to Def.'s Application for Writ of Error Coram Nobis, Aug. 3, 2005 at 5); *People v. Bachert*, 509 N.E.2d 318, 322 (N.Y. 1987). In *Bachert* the Court of Appeals "concluded that 'the natural [forum] for *coram nobis* review of ineffective assistance of appellate counsel claims is in the appellate tribunal where the allegedly deficient representation occurred.'" *Garcia v. Keane*, 973 F. Supp. 364, 370 (S.D.N.Y. 1997) (quoting *Bachert*, 509 N.E.2d at 322). The court in *Garcia* noted that *Bachert* "did not address whether claims of ineffective assistance of counsel relating to an application for leave to appeal to the Court of Appeals should be made directly to the Court of Appeals[,]" and referenced a subsequent Court of Appeals decision where it "explicitly held that '[t]here is no authority for initiating a writ of error *coram nobis* in the Court of Appeals.'"*Id.* (quoting *People v. Claudio*, 575 N.E.2d 385, 385 (N.Y. 1991). The New York Legislature has since remedied this problem. *See People v. Stultz*, 810 N.E.2d 883, 885-86 (N.Y. 2004) (reviewing the question of authority to consider claims of ineffective assistance of appellate counsel and addressing the Legislature's 2002 amendment to N.Y. CRIM. PROC. § 450.90). However, resolution of the question of the propriety of the forum is here superceded for purposes of federal habeas review by the Second Circuit's conclusion that there can be no cognizable habeas claim of ineffective assistance of counsel on discretionary appeal. *See infra* at 26.

the weight and sufficiency of the evidence and (2) the effectiveness of trial counsel, that are presented in the instant habeas petition. As a result, Burgos-Santos claims, the Court of Appeals was allowed to apply the harmless error standard instead of employing the stricter standard for allegations of constitutional violation. (ECN Petition at 12; *see also* Siligmueller Aff., Ex. 1at 6.)

In supplemental brief, Respondent argues that "Defendant's challenge to his attorney's performance before the New York Court of Appeals is not cognizable on federal habeas review. Because his appeal to that court was discretionary, he was not entitled to counsel. Consequently, even though counsel was assigned to assist petitioner, his performance cannot be assailed under the 6th Amendment." (*See* Respondent's Sur-Response, October 12, 2006 at 1 (referencing *Hernandez v. Greiner*, 414 F.3d 266 (2d Cir. 2005)).) The Court agrees. *See id.* at 270-71; *see also Pena v. United States*, 534 F.3d 92, 95 n.7 (2d Cir. 2008); *Duran v. Phillips*, No. 04 Civ. 302 (LTS) (FM), 2008 WL 3919195, at *8 (S.D.N.Y. Aug. 22, 2008); *Prousalis v. United States*, Nos. 06 Civ. 12946, 03 Cr. 1509 (DLC), 2007 WL 2438422, at *14 (S.D.N.Y. Aug. 24, 2007). Because there is no constitutional right to appellate counsel for discretionary appeals, it follows that Burgos-Santos's claim for ineffective assistance of appellate counsel in representing him before the Court of Appeals is not cognizable for federal habeas purposes. *See, e.g., Pena*, 534 F.3d at 95-96; *see also Prousalis*, 2007 WL 2438422, at *14.

Finally, even if Burgos-Santos had a right to counsel, his claim would fail on the merits. Following an initial request for review of all claims in both Burgos-Santos's *pro se* brief and counsel's brief, on November 27, 2001, appellate counsel submitted a letter to the Honorable Victoria A. Graffeo, Judge of the New York Court of Appeals, asking the court to address the sole issue: "can the People impeach a criminal defendant with his withdrawn statutory notice of alibi."

(Siligmueller Aff., Ex. 7 at 1.) Appellate counsel did not mention any other claims in this letter nor did he refer to any issues raised in his initial leave letter or appellate briefs. (*Id.*, Ex. 1 at 6.) Following the November 2001 letter, the Court of Appeals granted leave to appeal, and counsel submitted a brief further addressing that issue. The Court of Appeals found this was a meritorious argument, but upheld Burgos-Santos's conviction under the non-constitutional harmless error standard. *Brown*, 774 N.E.2d at 189. Burgos-Santos argues that there was precedent, including *Sanchez*, that should have been argued by appellate counsel to mitigate in favor of a finding that the evidence did not support the conviction of depraved indifference but should have been a charge of intentional murder. Burgos-Santos believes that if the Court of Appeals had been presented with this issue, he would have gotten a reversal of his conviction. He argues that the Court of Appeals had considered a number of convictions for depraved indifference in the same time period that his appeal was before them and the rate of reversal of convictions in those cases based on insufficient evidence suggests his conviction would likely have been overturned if his appellate counsel had raised that point on appeal. Contrary to Burgos-Santos's assertions, a reasonable review of the record indicates that appellate counsel strategically argued the issue of the withdrawn alibi notice to focus on what he may have reasonably considered a stronger issue. (*See* Respondent's Sur-Response at 1.) Further, appellate counsel's decision not to raise the other arguments on appeal does not constitute constitutionally ineffective assistance of counsel because there is no showing counsel omitted significant and obvious issues, *see Mayo*, 13 F.3d at 533, as there is serious question about the merits of the legal sufficiency claim. Burgos-Santos has failed to establish that the Appellate Division applied *Strickland* in an objectively unreasonable manner. Therefore, this claim should be **DENIED**.

27